UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CARLOS SANCHEZ,

                              Plaintiff,

v.

THE CITY OF BUFFALO, *et al.*,

                              Defendants.

_____

**REPORT AND
RECOMMENDATION**

17-CV-00455(LJV)(JJM)

       Plaintiff commenced this action *pro se*, pursuant to 42 U.S.C. §§1983, 1985 and 1986 alleging claims of false arrest, malicious prosecution, conspiracy, and intentional infliction of emotional distress. Complaint [1]; Supplemental Amended Complaint [25].[1]   Before the court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56 [32], which has been referred to me by District Judge Lawrence J. Vilardo for initial consideration [8]. Having considered the parties' submissions [32, 41, 42-44, 46, 49] and heard oral argument on August 6, 2021 [47], I recommend that the motion be granted in part and denied in part.

## BACKGROUND

       The circumstances at issue in this action center on two separate arrests.  The first, alleged in the Complaint [1], occurred on May 16, 2016, and the second, alleged in the Amended Supplemental Complaint [25],[2] occurred on November 2, 2018.  In opposition to defendants'

---

[1]      Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

[2]      Although captioned as an "Amended Supplemental Complaint", it was clearly intended to be, and I have treated it as, a supplemental pleading, rather than an amended pleading that superseded the Complaint. *See* <u>Anthony v. Brockway</u>, 2015 WL 3419536, *1 (N.D.N.Y. 2015) ("[e]ven though Plaintiff's original complaint is superseded by his amended/supplemental complaint, in light of Plaintiff's *pro se*

motion for summary judgment, plaintiff submits audio or video recordings [43] of many of the relevant events.  Each of these incidents are explained in more detail below.

### May 16, 2016 Arrest

Plaintiff and Alba Alvarez are the parents of a minor child.  Defendants' Statement of Facts [32-2] at ¶1.  By Decision and Order entered February 8, 2016, Erie County Family Court Judge Brenda Freedman[3] granted Ms. Alvarez sole custody of the child, but allowed plaintiff certain visitation rights, including access to the child on Mondays from 8:00 a.m. to 8:00 p.m.  (the "Visitation Order") [32-3] at 6.  Unlike the earlier Temporary Order of Visitation ([42] at 81), the Visitation Order did not specify a location for the exchange of the child (defendants' Statement of Facts [32-2] at ¶4), and the parties dispute whether Ms. Alvarez's home was the customary location for their exchanges.  *Compare* Defendants' Statement of Facts [32-2] at ¶7 *with* Plaintiff's Statement of Facts [42] at ¶7.[4]

On March 24, 2016, plaintiff petitioned the Family Court for the establishment of a "mutually convenient location" for the exchanges to occur.  He proposed the Tops Supermarket parking lot, a location not previously used by the parties, but equidistant between their two residences as the point of the exchange.  Defendants' Statement of Facts [32-2] at ¶¶6, 8; Plaintiff's Statement of Facts [42] at ¶¶4, 8.

status, the Court has considered the allegations in, and attachments to, both Plaintiff's original and amended/supplemental complaints").

[3]     Judge Freedman was named as a defendant in the Complaint, but the claims against her were previously dismissed. See June 16, 2020 Decision and Order [19].

[4]     Since plaintiff declared under penalty of perjury that the allegations contained in his Statement of Facts are true and correct pursuant to 28 U.S.C. §1746 ([42] at 55), I have treated it as a declaration for summary judgment purposes.  See Tackman v. Goord, 2005 WL 2347111, *26 (W.D.N.Y. 2005) (a "statement may properly be considered in opposition to summary judgment provided the proffered statement conforms to the requirements of 28 U.S.C. § 1746").

On May 16, 2016, the day plaintiff's petition to set an exchange location was scheduled to be heard, plaintiff picked up the child from outside of Ms. Alvarez's home at approximately 8:00 a.m.  Plaintiff's Statement of Facts [42] at 29, ¶5.  Thereafter, he attended the Family Court proceeding at which Judge Freedman denied the petition and directed the parties to work out the exchange location between themselves. Defendants' Statement of Facts [32-2] at ¶6; Plaintiff's Statement of Facts [42] at 30, ¶5.

In text exchanges that followed the denial of plaintiff's petition, Ms. Alvarez stated "that the case was dismissed, and that the drop off was her home", but plaintiff responded that the "child was going to be dropped off at 8:00 p.m. AS PER COURT ORDER[ ], at 'the proposed exchange location'". Plaintiff's Statement of Facts [42] at 30,  ¶5 (emphasis omitted). Shortly before 8:00 p.m. plaintiff drove the child to the Tops parking lot and advised Ms. Alvarez via text message that he would wait until 8:30 p.m. for her to arrive, but she did not respond to his messages.  Defendants' Statement of Facts [32-2] at ¶9; Plaintiff's Statement of Facts [42] at 30, ¶5.

When Ms. Alvarez failed to arrive by 8:30 p.m., plaintiff drove home with the child.  Plaintiff's Statement of Facts [42] at 31, ¶5.  Upon entering his driveway, he received a telephone call from defendant City of Buffalo Police Officer Lindsay Laracuente-Zgoda, who instructed him to bring the child to Ms. Alvarez's home as mandated by the Visitation Order. Defendants' Statement of Facts [32-2] at ¶10.  Despite plaintiff's attempt to explain that the Visitation Order did not specify a drop off location, Officer Laracuente-Zgoda directed him to deliver the child to Ms. Alvarez's home.  Plaintiff's Statement of Facts [42] at 31-32, ¶5.

Instead, plaintiff told her that he was going to take the child to the police station, a location Officer Laracuente-Zgoda herself indicated was used by many people to exchange their

children. Id.  However, Officer Laracuente-Zgoda responded that if plaintiff did so, he would be arrested. Id. at 33, ¶5; defendants' Statement of Facts [32-2] at ¶11; plaintiff's 50-h hearing transcript [32-4] at 38.  As she predicted, when plaintiff arrived at the police station and handed over the child, he was arrested for several offenses, including criminal contempt in the second degree, in violation of New York Penal Law §215.50(3), obstruction of governmental administration, in violation of New York Penal Law §195.05, and endangering the welfare of a child, in violation of New York Penal Law §260.10(1).  Defendants' Statement of Facts [32-2], ¶12; Information/Complaint [32-5]; Certificate of Disposition [32-6].  Those charges were later dismissed.  Certificate of Disposition [32-6].

As a result of this conduct, plaintiff alleges the following causes of action:

--      false arrest and malicious prosecution pursuant to 42 U.S.C. §1983 (Complaint [1], First Cause of Action);

--      conspiracy and failure to prevent a conspiracy pursuant to 42 U.S.C. §1985(3) and 1986 (id., Second and Third Causes of Action); and

--      intentional infliction of emotional distress (id., Fourth Cause of Action).

### November 2, 2018 Arrest

Plaintiff alleges that on October 27, 2018 two individuals, whom he was later able to identify from surveillance video, stole his power tools.  Amended and Supplemental Complaint [25], ¶17-20.[5]  He allegedly spotted those individuals on November 2, 2018, and

---

[5]      "[A] plaintiff's *pro se* status does not allow him to rely on conclusory allegations or unsubstantiated speculation to overcome a motion for summary judgment". Canady v. Correct Care Solutions, 2017 WL 4280552, *7 (S.D.N.Y. 2017).  However, since plaintiff declared under penalty of perjury that the allegations of his Amended and Supplemental Complaint are true and correct pursuant to 28 U.S.C. §1746 ([25] at 14), I have treated it as a declaration for summary judgment purposes.  *See* Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995), abrogated on other grounds by Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020); Weller v. Dykeman, 2012 WL 5409663, *4 (D. Vt.), adopted in relevant part, 2012 WL 5405405 (D. Vt. 2012) ("[v]erification pursuant to 28 U.S.C. § 1746, even absent notarization, is sufficient to qualify a document as an affidavit . . . .  Put another way, verification of a

when he approached them, they fled on foot.  Id. at ¶¶21-23.  However, plaintiff was able to

detain one of the individuals and called the police.  Id. at ¶23.  Despite showing the responding

officers (defendant City of Buffalo Police Officers Brandon Hawkins, Lauren Tripp and Corey

Espinosa) the surveillance video on his cell phone, they declined to arrest the suspect (Carlos

Manuel), at which point plaintiff asked for the name of their supervisor, who was identified as

defendant Lieutenant Michael Farley.  Id. at ¶¶27-31.  Plaintiff then proceeded to the B-District

police station and "just moments" after speaking with Lieutenant Farley, was joined by the

responding officers, who joined the conversation, and he was placed under arrest.  Id. at ¶¶ 31-

34.

     Plaintiff was charged by Information/Complaint [32-7] with menacing in the

second degree, in violation of New York Penal Law §120.14(1), and assault in the second

degree, in violation of New York Penal Law §120.05(2).  The Certificate of Disposition [32-8]

indicates that the charge for assault in the second degree was later reduced to assault in the third

Degree.  All charges arising from the events of November 2, 2018, were later dismissed.  Id.

     As a result of this conduct, plaintiff alleges the following causes of action:

  --  false arrest and malicious prosecution pursuant to 42 U.S.C. §1983 (Amended
Supplemental Complaint [25], First Cause of Action);

  --  conspiracy and failure to prevent a conspiracy pursuant to 42 U.S.C. §§1985(2),
1985(3), and 1986 (id., Second, Third and Fourth Causes of Action); and

  --   intentional infliction of emotional distress (id., Fifth Cause of Action).

---

complaint pursuant to 28 U.S.C. § 1746 transforms the factual statements therein 'from mere allegations
of a pleading into 'specific facts' as in an evidentiary affidavit'").

# DISCUSSION

## A.    Summary Judgment Standard

"A party moving for summary judgment bears the burden of establishing that there exists no genuine issue of material fact warranting a trial . . . . In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." Gummo v. Village of Depew, N.Y., 75 F.3d 98, 107 (2d Cir. 1996); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

"Once that burden has been established, the burden then shifts to the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial . . . . To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor." Guerrero v. Lowe's Home Centers, Inc., 462 F.Supp.2d 399, 406 (W.D.N.Y.2006) (Siragusa, J.), aff'd, 254 Fed. Appx. 865 (2d Cir. 2007) (Summary Order). *See also* Celotex, 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"); Giannullo v. City of New York, 322 F.3d 139, 141 n. 2 (2d Cir. 2003) ("a defendant may move for summary judgment on the ground that the plaintiff has failed to adduce any evidence of an element of plaintiff's claim, and if the plaintiff fails in response to contest this assertion or adduce such evidence, defendant, without more, will prevail").

**B.      Qualified Immunity**

Even where a constitutional violation is shown, an individual defendant may

avoid liability on the ground of qualified immunity when the "conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

White v. Pauly, __ U.S. __, 137 S.Ct. 548, 551 (2017). The "dispositive inquiry in determining

whether a right is clearly established is whether it would be clear to a reasonable officer that his

conduct was unlawful in the situation he confronted". Saucier v. Katz, 533 U.S. 194, 202 (2001).


**C.      Should Plaintiff's Exhibits in Opposition to Defendant's Motion be Considered?**

It does not appear that much (if any) discovery was exchanged between the

parties during the approximately six-month period for fact discovery. *See* Case Management

Order [26], ¶7.  In fact, plaintiff acknowledges that he "did not fully comply with the

defendant[s'] discovery demand nor did [he] request[ ] any discovery from defendants".

Plaintiff's Sur-Reply [46] at 3.

As best as I can discern from the record, defendants served a Request for

Production dated September 30, 2020 [32-9], which requested, *inter alia*, "[a]ll . . . video . . . and

audio recordings relating to the events alleged in plaintiff's complaint and supplemental

complaint".  Id. at ¶7.  There is no response to that discovery request contained in the record and

plaintiff "concede[s] to failing to properly cooperate with discovery demands".  Plaintiff's Sur-

Reply [46] at 3.

Without moving to strike any particular exhibits, defendants argue that since

plaintiff failed to respond to their discovery requests, he "should not be allowed to use evidence

on summary judgment that was not produced during discovery".  Lee Reply Declaration [44], ¶4.

In response, plaintiff argues that it was defendants' "remedy . . . to compel [that] discovery", which was identified in his initial disclosures, rather than to seek to preclude the use of that discovery in opposition to their summary judgment motion. Id. at 3-4.  I agree.

"Federal courts have been reluctant to exclude evidence at summary judgment when a party has slept on their rights in discovery." The Christensen Firm v. Chameleon Data Corp., 2006 WL 3158246, *5 (W.D. Wash. 2006).  In other words, "the moving party . . .  may not wait until the summary judgment stage to object to the use of materials that it has made no prior reasonable efforts to obtain". Cash v. State Farm Fire & Casualty Co., 125 F. Supp. 2d 474, 477 (M.D. Ala. 2000).  *See also* McPhail v. City of Jackson, 2014 WL 2819026, *5 (S.D. Miss. 2014) (denying motion to strike at summary judgment stage because "defendants . . .  were responsible for seeking an order compelling Plaintiff to submit responses to their discovery requests prior to the close of discovery").

That is what occurred here. The existence of much of the evidence offered by plaintiff in opposition to defendants' summary judgment motion was disclosed by plaintiff in his Rule 26(a)(1) Initial Disclosure ([46] at 14-20) that was served on August 26, 2020[6] and requested by defendants in their September 30, 2020 Request for Production [32-9].  Despite their knowledge of the existence of material evidence in plaintiff's possession, including video and audio recordings of the subject incidents, defendants made no effort to secure responses to their discovery demands during the fact discovery period.  Therefore, having "slept on their rights in discovery", Christensen, 2006 WL 3158246, *5, I find no reason to exclude plaintiff's exhibits.

---

[6]       Rule 26(a)(1)(A)(ii) requires the disclosure of "a copy - *or a description by category and location* - of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses" (emphasis added).

**D.       False Arrest**

         The existence of probable cause presents a "total defense" to a claim of false

arrest. <u>Stansbury v. Wertman</u>, 721 F.3d 84, 89 (2d Cir. 2013). "[P]robable cause to arrest exists

when the officers have knowledge or reasonably trustworthy information of facts and

circumstances that are sufficient to warrant a person of reasonable caution in the belief that the

person to be arrested has committed or is committing a crime . . . . The question of whether or

not probable cause existed may be determinable as a matter of law if there is no dispute as to the

pertinent events and the knowledge of the officers". <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir.

1996).  For false arrest claims, "[t]he validity of an arrest does not depend upon an ultimate

finding of guilt or innocence . . . .  Rather, the court looks only to the information that the

arresting officer had at the time of the arrest."  <u>Peterson v. County of Nassau</u>, 995 F. Supp. 305,

313 (E.D.N.Y. 1998).


**1.       May 16, 2016 Arrest**

         Although "probable cause to arrest [p]laintiff for *any single offense*", charged or

uncharged, defeats a claim of false arrest, <u>Ackerson v. City of White Plains</u>, 702 F.3d 15, 20 (2d

Cir. 2012) (emphasis added), defendants only rely on the existence of probable cause for

plaintiff's arrest for criminal contempt in the second degree.  Pursuant New York Penal Law

§215.50(3), "[a] person is guilty of criminal contempt in the second degree when he engages

in . . . [i]ntentional disobedience or resistance to the lawful process or other mandate of a court".

As defendants acknowledge, "[t]o sustain a charge of criminal contempt based on a violation of a

court order, there must exist a lawful court order clearly expressing an unequivocal mandate, and

there must be an intentional violation of the order despite the charged party's knowledge of the

order". Defendants' Memorandum of Law [32-10] at 4. The existence of probable cause here turns on whether plaintiff violated the Visitation Order, and more particularly, whether he intentionally violated an unequivocal mandate.

Defendants point to the Visitation Order's "clear[ ] mandate[] that plaintiff 'shall have access with [to the child] on Mondays from 8:00am until 8:00pm'" to argue that "[p]laintiff put himself in violation of that order when he failed to return the child to the mother - the custodial parent who shares a home with the child - by 8:00 p.m. on Monday, May 16, 2016". Defendants' Memorandum of Law [32-10] at 5. In response, plaintiff argues that he was not in violation of the Visitation Order which was silent as to the exchange location, but that even if a violation had occurred, it should have been addressed as a Family Court matter, rather than by a criminal arrest. Plaintiff's Memorandum of Law [42] at 5-7, 9-10.

While the parties would have benefited from having an exchange location established by Family Court, the court's unwillingness to do so did not give plaintiff the unilateral right to establish the drop off location for the child or, more importantly, to ignore the time limitations on his visitation rights. By retaining the child after 8:00 p.m. when plaintiff could have timely returned the child to the same nearby location - the child's home - from which he had picked up the child earlier that day to begin his visitation, probable cause (or at least arguable probable cause) existed to conclude that plaintiff was in violation of the Visitation Order and that his actions violated New York Penal Law §215.50(3).

Similarly in Rheingold v. Harrison Town Police Department, 568 F. Supp. 2d 384, 390 (S.D.N.Y. 2008), the court held that "[a]s to whether returning the children twenty minutes late expressed an intent to violate the order, which is an element for establishing whether plaintiff is guilty of criminal contempt in the second degree; here, the arresting officer need not

make any decisions or conclusions about plaintiff's intent beyond the observation that plaintiff knew about the order and was in violation of it at the time of the arrest. For the purpose of establishing probable cause to arrest, that is enough."

Given the existence of probable cause for plaintiff's arrest, his arguments concerning whether the officers should have exercised their authority to arrest and charge him are unpersuasive. "Plaintiff's expectations of what a reasonable police officer would have done under the circumstances are not reasonable considering the unfair burden it would place on the officers." Rheingold, 568 F. Supp. 2d at 391. "Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989).

For the first time in his Sur-Reply, plaintiff argues that law enforcement lacked any authority to enforce the Visitation Order. Plaintiff's Sur-Reply [46] at 5.[7] In support of that argument he relies on People v. Lawler, 140 Misc. 2d 661 (Albany Cty. Ct. 1988) and People v. Rech, 56 Misc.3d 490 (Monroe Cty. Ct. 2017), both of which addressed the charge of obstructing governmental administration in the second degree, in violation of New York Penal Law §195.05. Unlike the contempt statute at issue here, to be guilty of obstructing governmental administration in the second degree, one must prevent a "public servant from performing an *official function*". Id. (emphasis added).

In Rech, an obstruction of governmental administration charge was dismissed because the court's order, which directed law enforcement to enter the defendant's home to effectuate the return of the child, "was not valid on its face and thus the deputies were not

---

[7]     Because the argument was not timely raised, I afforded defendants an opportunity to respond to it in writing [48, 49].

carrying out an 'official function'". Id. at 494-95.  By contrast, here there is no claim that the Visitation Order was invalid.

Closer to the circumstances of this case, Lawler addressed "whether or not it was an official function of the police to enforce, sua sponte, . . . a Family Court visitation order". 140 Misc. 2d at 663.  In overturning the defendant's conviction for obstructing governmental administration in the second degree, the court explained that whereas provisions of the Family Court Act expressly provide that certain orders, including orders of protection, may be enforced by the police, "[t]here is no comparable provision of the Family Court Act, or elsewhere, with respect to an order of visitation.  With respect to orders of visitation, enforcement lies in the contempt powers of the court". 140 Misc.2d at 665.  The court continued:

> "The range of authorized police activity is broad, but it is not unlimited. All of the police activities . . .  both criminal and non-criminal, are specifically authorized by a statute, or involve a breach of the peace, or arise out of an emergency situation. None of these categories fit a Family Court visitation order. To allow the police on their own, without a specific direction of the court issuing the visitation order, to enforce such order, would seriously disturb the delicate fabric of familial relationships for which the Family Court was created, and was designed to supervise. For example, visitation orders are ofttimes violated because of reciprocal violations of support orders. Are the police to be allowed to pick and choose to which of these familial rights they will give priority? Police are not a civil collecting agency unless specifically directed by a statute or a court. No more are they a sua sponte arbiter of familial relationships unless so directed or unless, at least, a breach of the peace, or an emergency, is imminent." Id. at 666-67.

The rationale of Lawler may be persuasive, but as defendants note, both Lawler and Rech hinged on whether law enforcement was performing an "official function" - an element not required for criminal contempt in the second degree. See Defendants' letter brief [49] at 2. Therefore, I conclude that this line of cases are inapplicable here, and recommend that defendants' motion to dismiss the false arrest claim arising from his May 16, 2016 arrest be granted.

In any event, as defendants also argue (id.), even if Rech and Lawler could be read more broadly to prohibit any police enforcement of a family court visitation order, that law is not sufficiently settled to prevent application of qualified immunity.  As discussed above, "[p]ublic officials are entitled to qualified immunity unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time." District of Columbia v. Wesby, __ U.S.__, 138 S. Ct. 577, 589 (2018).  "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every 'reasonable official would understand that what he is doing is unlawful." Id. In short, it "must be settled law . . .  which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority". Id. at 589-90.  This demanding standard requires that "[t]he precedent must be clear enough that *every reasonable official* would interpret it to establish the particular rule the plaintiff seeks to apply". Id. at 590 (emphasis added).

Here, it is not clearly established that law enforcement lacks authority to make warrantless arrests for violations of family court visitation orders.  Neither Rech nor Lawler - both New York County Court decisions - are controlling.  Moreover, at least one higher court has affirmed a conviction for criminal contempt in the second degree arising from a violation of a family court custody order.  *See* People v. Wyne, 200 A.D.2d 779 (2d Dept. 1994). Likewise, in Rheingold, supra, the court determined that law enforcement had probable cause as a matter of law to arrest plaintiff for criminal contempt in the second degree for an alleged violation of a family court visitation order. 568 F. Supp. 2d at 390-91. *See also* Brady v. Marks, 7 F. Supp. 2d 247, 250 (W.D.N.Y. 1998) (in describing the background of the action, the court explained that plaintiff  was "charged with two counts of Criminal Contempt in the Second Degree based on his alleged violation of the Family Court's custody and visitation order" and that his "conviction was

affirmed on appeal, and plaintiff was denied leave to appeal to the Court of Appeals").  Since there is no consensus of persuasive authority on this question, I conclude that an officer of reasonable competence would have concluded that plaintiff's violation of the Visitation Order provided probable cause for his arrest, and therefore, at minimum, the individual defendants would be entitled to qualified immunity.  *See* Sanseviro v. New York, 685 Fed. App'x 75, 78-79 (2d Cir. 2017) (Summary Order) ("[a]t the time of Sanseviro's arrest, it was not clearly established that § 265.00(22)(a) . . . excluded rifles whose banned features were obscured or disguised . . . . Since an officer of reasonable competence could have concluded that Sanseviro violated the law, those involved in his arrest and prosecution are entitled to qualified immunity"); Mikulec v. Town of Cheektowaga, 909 F. Supp. 2d 214, 226 (W.D.N.Y. 2012) ("the law on this issue is far from established, [and] . . . .  [a]s such, the officers are protected by the doctrine of qualified immunity").

### 2.    November 2, 2018 Arrest

For his alleged conduct on November 2, 2018, plaintiff was charged with menacing in the second degree, in violation of New York Penal Law §120.14(1). [32-7] at 2. Under that statute, "[a] person is guilty of menacing in the second degree when . . . [h]e . . . intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a . . . dangerous instrument". [8]  Although plaintiff

---

[8]    A dangerous instrument is defined as "any instrument, article or substance . . . which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury". New York Penal Law §10.00(13).  "It is too obvious to need elaboration that when used outside its sports context, [a bat] is a dangerous instrument of the very type recognized as an effective weapon since primitive times." People v. Ozarowski, 38 N.Y.2d 481, 491 (1976).

was also charged with assault in the second degree, a class D felony (*see* New York Penal Law §120.05), defendants rely on the existence of probable cause to support the reduced charge of assault in the third degree, a class A misdemeanor (*see* New York Penal Law §120.00). Defendants' Memorandum of Law [32-10] at 5.  A person is guilty of violating that statute, when "[w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person".  New York Penal Law §120.00(1).

In support of summary judgment defendants rely solely on the facts as set forth in the November 2, 2018 Information/Complaints signed by Officer Hawkins as the complainant. The Information/Complaint charging plaintiff with menacing in the second degree ([32-7] at 2) stated, in relevant part, that:

"the [plaintiff], while at 833 Prospect [Avenue in the City of Buffalo], did strike him about his right arm and hand with a bat.  Officers did arrive on scene and did observe [plaintiff] standing over the complainant with a bat in his hand.  Said actions by the [plaintiff] did place the complainant in imminent fear of serious physical injury".

Likewise, the Information/Complaint ([32-7] at 1) charging him with assault in the second degree stated, in relevant part, that:

"[t]he complainant reports, the said [plaintiff], while at 833 Prospect did strike him about his right arm and hand with a bat.  Officers did arrive on the scene and did observe [plaintiff] standing over the complainant with a bat in his hand.  The complainant did sustain substantial pain, bruising to his right arm and hand".

Initially, the Information/Complaints - the lone evidence defendants rely upon - are both unsworn[9] and do not substantially comply with the requirements for a declaration pursuant to 28 U.S.C. §1746.  Such "statements are generally not considered as evidence in

---

[9]      They state "Subscribed and sworn to me this 2nd of November, 2018", but are unsigned by a notary.

opposition to summary judgment". <u>Waddlington v. City of New York</u>, 971 F. Supp. 2d 286, 292 (E.D.N.Y. 2013). *Compare with* <u>LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham</u>, 185 F.3d 61, 65–66 (2d Cir. 1999) (permitting consideration of an unsworn letter on summary judgment where it "substantially complie[d]" with these statutory requirements of 28 U.S.C. §1746).

However, even if Officer Hawkins' unsworn statements were sufficient to satisfy defendants' burden on this motion, plaintiff alleges that the Officer Hawkins "lied under oath" in the Information/Complaints. Plaintiff's Statement of Facts [42] at ¶18.   There is support for that argument.  By acting as the complainant, Officer Hawkins' sworn statements identifies *himself* as the individual who was struck by plaintiff.  However, that squarely conflicts with defendants' own version of events that plaintiff was alleged to have assaulted "the individual who allegedly stole his property" - someone other than Officer Hawkins.  Lee Reply Declaration [44], ¶12; defendants' Memorandum of Law [32-10] at 5. Hence, on its face, the factual basis for alleged crime - *i.e.*, that plaintiff struck Officer Hawkins with the bat - was false.

In any event, regardless of whether Officer Hawkins or someone else was the alleged victim, plaintiff disputes the content of the Information/Complaints alleging that it was "fabricated". Plaintiff's Memorandum of Law [42] at 10. [10]   More specifically, he states that law enforcement did not "find [him] on top of the alleged victim, neither a bat or any other alleged dangerous weapon was seen, found, or presented as evidence". <u>Id</u>. He also disputes whether the

---

[10]     Although these facts were asserted in the plaintiff's Memorandum of Law, he declared under the penalty of perjury that the facts alleged therein were true and correct.  [42] at 22.  Therefore, I have treated this submission as a declaration. *See* <u>Aikens v. Rao</u>, 2015 WL 5919950, *6 n.8 (W.D.N.Y. 2015) ("[a]lthough captioned as a Memorandum of Law . . . plaintiff declares under penalty of perjury the truth of its content . . . .  Therefore, I consider the factual allegations contained in that submission to constitute admissible evidence").

victim could have reported anything to Officers Hawkins and Tripp, since "upon information and belief, [neither] speak fluent Spanish" and "the individual allegedly assaulted was a Spanish speaker with no understanding of English". Id. at 9.

Faced with defendants' reliance on the unsworn and incorrect version of events contained in the Information/Complaints completed by Officer Hawkins, and giving plaintiff every favorable inference as the non-movant, I conclude that the competing facts he presents establish that defendants have not demonstrated their entitlement to summary judgment on plaintiff's false arrest claim.  These factual issues, which include an allegation from plaintiff that the facts supporting his arrest were fabricated, also preclude me from concluding that defendants are entitled to qualified immunity. See McDermott v. Marandi, 2007 WL 2844961, *1 (S.D.N.Y. 2007) (the "issues of fact [that] prevent the court from deciding now whether plaintiff's claims of false arrest and malicious prosecution have merit . . .  also prevent the court from deciding on the defense of qualified immunity presented by the police").  Therefore, I recommend that defendants' motion to dismiss this portion of the false arrest claim be denied.


E.        **Malicious Prosecution**

To prevail on a § 1983 claim for malicious prosecution, a plaintiff must show "a seizure or other perversion of proper legal procedures implicating his personal liberty and privacy interests under the Fourth Amendment", as well as that "criminal proceedings were initiated or continued against him, with malice and without probable cause, and were terminated in his favor". Lanning v. City of Glens Falls, 908 F.3d 19, 24 (2d Cir. 2018).

Defendants argue that "plaintiff cannot establish that the criminal proceedings terminated in his favor because although the charges were ultimately dismissed, there is no

evidence that the dismissal involve the merits or are indicative of plaintiff's innocence", and that he "cannot establish the actual malice element of his malicious prosecution claim because there is no evidence that [the] officers did not believe plaintiff was guilty of the crimes charged, or that they were motivated by any wrong or improper purpose".  Defendants' Memorandum of Law [32-10] at 6.  They also point to the existence of at least arguable probable cause for the charges as a defense to plaintiff's malicious prosecution claims.  Id.

### 1.  May 16, 2016 Arrest

#### a.  Probable Cause

Although probable cause is a defense to malicious prosecution claims, "[t]he probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases . . . .  Probable cause, in the context of malicious prosecution, has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Stansbury v. Wertman, 721 F.3d 84, 95 (2d Cir. 2013); Spagnuolo v. Howell, 814 Fed. App'x 614, 617 (2d Cir. 2020) (Summary Order).[11]  As a result, "[t]he existence of probable cause is measured as of the time the judicial proceeding is commenced, rather than the time of arrest". Knox v. Khan, 2019 WL 1099952, *8 (E.D.N.Y. 2019); Jackson v. Nassau County, 2021 WL 3207168, *11 (E.D.N.Y. 2021).  Notably, "unlike false arrest

---

[11]      At least one court has clarified "that the probable cause standard for prosecution is 'heightened' only in the sense that it focuses on facts and circumstances available to an officer at a later point in time and in the context of a different decision. Whereas probable cause to arrest considers an officer's belief that 'the person to be arrested has committed or is committing a crime' in light of the facts and circumstances available to him *at the time of arrest*, probable cause to prosecute considers an officer's belief that 'he has lawful grounds for prosecuting the defendant in the manner complained of' in light of the facts and circumstances available to him *at the time he initiates the prosecution*." Norton v. Town of Islip, 2016 WL 264930, *5 (E.D.N.Y. 2016) (emphasis in original), aff'd, 678 Fed. App'x 17 (2d Cir. 2017) (Summary Order).

claims, the defendant must have possessed probable cause as to *each offense charged*". <u>Costello v. Milano</u>, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014) (emphasis added); <u>Knox</u>, 2019 WL 1099952, *8 ("to defeat a malicious prosecution claim, defendants must have reasonable or probable cause for each offense charged").  Notwithstanding these differences, "[i]n the context of false arrest and malicious prosecution claims, an officer is entitled to qualified immunity if he had either probable cause or "arguable probable cause." <u>Dufort v. City of New York</u>, 874 F.3d 338, 354 (2d Cir. 2017).

       Notwithstanding the requirement that probable cause exist for each offense charged, defendants fail to address the charges of obstructing governmental administration in the second degree, in violation of New York Penal Law §195.05, and endangering the welfare of a child, in violation of New York Penal Law §260.10(1).  Therefore, defendants have failed to establish as a matter of law that probable cause (or arguable probable cause) existed for *each* of the charges.

       **b.**    **Favorable Termination**

       "[A] plaintiff asserting a malicious prosecution claim under § 1983 must . . . show that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence".  <u>Lanning</u>, 908 F.3d at 22.  *See also* <u>Barnett v. Dillon</u>, 890 F. Supp. 83, 87 (N.D.N.Y. 1995) ("[f]avorable termination of the criminal proceedings is an essential element of a malicious prosecution claim"). Under this standard, a plaintiff must demonstrate "that the prosecution terminated in some manner indicating that the person was not guilty of the offense charged", rather than "on any number of procedural or jurisdictional grounds." <u>Lanning</u>, 908

F.3d at 26, 28.[12] *See also* Virgil v. City of New York, 2019 WL 4736982, *7 (E.D.N.Y. 2019 ("[i]t is the plaintiff's burden to demonstrate that [the] charges against him were terminated favorably").

   "This requirement is most easily met with a judgment of acquittal.  But . . . a termination may be favorable when, although the termination is not based on the merits, the failure to proceed implies a lack of reasonable grounds for the prosecution." Ashley v. City of New York, 992 F.3d 128, 140 (2d Cir. 2021); Murphy v. Lynn, 118 F.3d 938, 948 (2d Cir. 1997) ("[t]he answer to whether the termination is indicative of innocence depends on the nature and circumstances of the termination; the dispositive inquiry is whether the failure to proceed 'impl[ies] a lack of reasonable grounds for the prosecution'"). *See also* Rosario v. City of New York, 2019 WL 4450685, *4 (S.D.N.Y. 2019) ("[n]o single type of disposition is necessary or sufficient, but the termination must be 'measured in objective terms by examining the totality of the circumstances'", *quoting* Lanning, 908 F.3d at 28).

   The Certificate of Disposition [32-6] relied upon by defendants indicates that the charges were dismissed in the "interest/furtherance of justice" pursuant to New York Criminal Procedure Law ("CPL") §170.30(1)(g).[13]  Plaintiff presents no evidence concerning the particulars of the dismissal, beyond noting that the dismissal followed his rejection of the

---

[12] The Second Circuit has rejected "the more permissive standard of proof for malicious prosecution claims asserted under New York state law". Thompson v. Clark, 794 Fed. App'x 140, 141 (2d Cir. 2020), cert. granted in part, 141 S. Ct. 1682, 209 L. Ed. 2d 263 (2021).

[13] CPL §170.30(1)(g) provides that "[a]fter arraignment upon an information, a simplified information, a prosecutor's information or a misdemeanor complaint, the local criminal court may, upon motion of the defendant, dismiss such instrument or any count thereof upon the ground that . . . . [d]ismissal is required in furtherance of justice, within the meaning of section 170.40".

prosecution's offer of an adjournment in contemplation of dismissal.  Plaintiff's Statement of Facts [42] at 45, ¶14.

Without more from plaintiff about the circumstances of the dismissal, "the dismissal of [p]laintiff's case under [CPL] Section 170.30 cannot support a claim for malicious prosecution". Essani v. Earley, 2021 WL 1579671, *9 (E.D.N.Y. 2021). *See also* Lanning, 908 F.3d at 28–29 ("where a dismissal in the interest of justice leaves the question of guilt or innocence unanswered, it cannot provide the favorable termination required as the basis for that claim"); Murphy, 118 F.3d at 949 ("dismissals by the prosecution 'in the interests of justice' under [CPL] § 170.40, are generally considered not to be dispositions in favor of the accused"); Rheingold, 568 F. Supp. 2d at 393 ("[a]ccording to the Certificate of Disposition . . . the charge of criminal contempt in the second degree under New York Penal Law § 215.50 against plaintiff was dismissed . . . .  Plaintiff has failed to state a cause of action for malicious prosecution because he does not and apparently cannot allege that he was found innocent in the criminal action").  Moreover, although the Certificate of Disposition [32-6] indicates that the matter was sealed pursuant to CPL §160.50, "[f]ederal courts have rejected the contention that sealing under § 160.50 affirmatively indicates a plaintiff's innocence." Abusikin v. City of New York, 2021 WL 930349, *9 (S.D.N.Y. 2021).  Therefore, I recommend that plaintiff's malicious prosecution claim arising from his May 16, 2016 arrest be dismissed.


**2.    November 2, 2018 Arrest**

As discussed above, I conclude that there are issues of material fact as to whether plaintiff's arrest for second degree assault and menacing was supported by probable cause. Thus,

defendant's entitlement to summary judgment hinges on the favorable termination element of plaintiff's malicious prosecution claim.

Defendants rely on the Certificate of Disposition [32-8] for the charges arising from plaintiff's November 2, 2018 arrest, which indicates that the charges were dismissed on motion, but provides no detail of the circumstances of the dismissal, including who filed the motion or the grounds upon which it was granted. Plaintiff attempts to fill that void by that stating that "[d]uring arraignment and through the prosecution of the charges, [it] became known that the defendant police officers lied under oath in their sworn statements . . . that their case was so flawed . . . that the case was purposely terminated in such a way as to give the impression of unfavorable termination".  Plaintiff's Statement of Facts [42] at ¶18.

"Though a dismissal does not foreclose a finding of favorable termination under federal law, it does not *per se* demonstrate favorable termination." Abusikin, 2021 WL 930349, *9.  For example, "[d]ismissals of criminal proceedings for facial insufficiency are not sufficiently favorable to the accused to be indicative of innocence." Black v. Petitinato, 761 Fed. App'x 18, 23 (2d Cir. 2019) (Summary Order). It remains plaintiff's burden to "give a specific reason for the dismissal that affirmatively demonstrates his innocence".  Abusikin, 2021 WL 930349, *9.

Without something more than the conclusory and speculative reasons offered by plaintiff as to the circumstances leading to the dismissal of the charges - a dismissal he acknowledges had the impression of being "unfavorable" - plaintiff has failed to meet his burden of offering evidence that the prosecution terminated in a manner indicative of his innocence. *See* McKeefry v. Town of Bedford, 2019 WL 6498312, *8 (S.D.N.Y. 2019) ("plaintiff's argument that that her criminal case was dismissed because Defendants did not want to perjure themselves

is far too speculative to avoid dismissal"); <u>Kraus v. Town of Friendship</u>, 2017 WL 2403309, *5
(W.D.N.Y.), <u>adopted</u>, 2017 WL 4581580 (W.D.N.Y. 2017) (Vilardo, J.) ("[i]f [the] Court had
held some sort of hearing and had specifically negated the officers' probable cause on federal
constitutional grounds, or perhaps found [plaintiff] not guilty on the merits, then that ruling
potentially would have changed [plainitff's] situation. As it stands, this Court cannot speculate
that . . . this Court dismissed the charges because it found [plaintiff] not guilty"); <u>Foy v. City of
New York</u>, 2019 WL 3717317, *7 (E.D.N.Y. 2019) ("[p]laintiff argues that because 'there was
no motion pending to dismiss for lack of a speedy trial or to dismiss in the interests of justice[,]
[i]t is fair to conclude . . . that the District Attorney's motion to dismiss was based on an inability
to prove guilt beyond a reasonable doubt.' . . . That speculation is insufficient to meet the
standard set out in <u>Lanning</u>").

   While the charge for second degree assault was reduced to third degree assault
(*see* Certificate of Disposition [32-8]), that reduction, which terminated the initial charge, also
"does not, on its face, address the merits of the charge".  <u>Daniels v. Gladstone</u>, 2019 WL
3502924, *12 (E.D.N.Y. 2019).  Absent some evidence from plaintiff as to the circumstances
that led to the lesser charge, I cannot conclude that it provides an affirmative indication of his
innocence on the initial charge.  Therefore, I recommend that this portion of defendants' motion
be granted.  *See* <u>Boans v. Town of Cheektowaga</u>, 5 F. Supp. 3d 364, 380 (W.D.N.Y. 2014)
("although the issue of probable cause supporting Plaintiff's arrest prevents summary judgment
on Plaintiff's § 1983 false arrest claim, Plaintiff cannot prevail on his § 1983 malicious
prosecution claim because he has failed to establish the underlying criminal action was
terminated in his favor as is Plaintiff's burden").

**F.      Conspiracy and Failure to Prevent a Conspiracy**

"In order to state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must show: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 791 (2d Cir. 2007).  Additionally, "[a] § 1985(3) conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." Id.  Likewise, in relevant part, 42 U.S.C. §1985(2) bars conspiracies to obstruct justice in state judicial proceedings and require a showing that the co-conspirators' actions were motivated by discriminatory "racial, ethnic, or class-based animus".  Zemsky v. City of New York, 821 F. 2d 148, 151 (2d Cir. 1987).  42 U.S.C. §1986 "imposes liability on an individual who has knowledge of discrimination prohibited under § 1985".  Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996).

Defendants raise several arguments in support of dismissal of these claims, including that plaintiff fails to allege that any of the alleged conduct was "motivated by some racial or other class-based discrimination".  Defendants' Memorandum of Law [32-10] at 6.  I agree.  Without any allegation or evidence from plaintiff that the alleged conduct was motivated by race or some other class-based discriminatory animus, I recommend that plaintiff's conspiracy claims arising from the events of May 16, 2016 and November 2, 2018 be dismissed. See Collins v. W. Hartford Police Department, 324 Fed. App'x 137, 139 (2d Cir. 2009) (Summary Order) (dismissal of the § 1985 and § 1986 conspiracy claims was proper where the plaintiff failed to make any plausible allegation that there was 'some racial, or perhaps otherwise

class-based, invidiously discriminatory animus behind the conspirators' action'"); Foskey v.

Northrup, 2021 WL 1146217, *5 (N.D.N.Y. 2021) ("[p]laintiff fails to state a claim under §§

1985 and 1986, because the Complaint contains no allegations regarding discriminatory

animus").


**G.      Intentional Infliction of Emotional Distress**

    Under New York State law, the "tort of intentional infliction of emotional distress

has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional

distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional

distress". Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996). Here, "the alleged

conduct fits well within the traditional tort theories of false arrest [and] malicious

prosecution . . . . Accordingly, the claim of intentional infliction of emotional distress will not

fly". Yang Feng Zhao v. City of New York, 656 F. Supp. 2d 375, 405 (S.D.N.Y. 2009). *See

also* Stampf v. Long Island Railroad Authority, 2010 WL 2517700, *11 (E.D.N.Y.  2010) ("a

claim for IIED based on false arrest and malicious prosecution is precluded by the fact that the

underlying conduct is actionable under another theory of tort liability"). Therefore, I recommend

that the claim be dismissed in its entirety.

    As an additional and independent ground for dismissal of the intentional infliction

of emotional distress claim arising from plaintiff's November 2, 2018 arrest, defendants argue

that the claim is barred by the limitations period of New Yok General Municipal Law § 50-

i(1)(c), which requires that a plaintiff commence the action within one year and 90 days "after

the happening of the event on which the claim is based". *See* Hotter v. Schriro, 2018 WL

2081863, *8 (S.D.N.Y. 2018). Since the Amended Supplemental Complaint [25] was not filed

until July 22, 2020 - more than one year and 90 days following the November 2, 2018 incident - I agree with defendants, and recommend that portion of the claim also be dismissed on timeliness grounds.

## CONCLUSION

For these reasons, I recommend that defendants' motion for summary judgment [32] be granted, except to the extent that it seeks dismissal of the false arrest claim arising from plaintiff's November 2, 2018 arrest against the defendants named in the Amended Supplemental Complaint [25]. Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by October 18, 2021. Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new

arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated:  September 30, 2021

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge

-27-