UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CARLOS M. SANCHEZ,

                Plaintiff,

      v.                                   17-CV-455-LJV-JJM
                                            DECISION & ORDER

THE CITY OF BUFFALO, *et al.*,

                Defendants.

_____


On May 23, 2017, the *pro se* plaintiff, Carlos Sanchez, commenced this action

alleging claims of false arrest, malicious prosecution, conspiracy, failure to prevent a

conspiracy, and intentional infliction of emotional distress under 42 U.S.C. §§ 1983,

1985, and 1986, as well as New York State law.[1]  Docket Item 1.  On September 24,

2019, this Court referred the case to United States Magistrate Judge Jeremiah J.

McCarthy for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).  Docket Item 8.

---

[1] Sanchez initially filed his complaint against the City of Buffalo, the Buffalo Police Department ("BPD"), the Honorable Brenda M. Freedman, and five BPD officers. Docket Item 1.  On June 16, 2020, Judge Freedman was dismissed as a defendant. Docket Item 19.

On July 17, 2020, Sanchez moved to amend the complaint, Docket Item 23, and his motion was granted on July 22, 2020, Docket Item 24.  Sanchez then filed an "Amended Supplemental Complaint" which added three BPD officers and one BPD lieutenant as defendants.  Docket Item 25.  Judge McCarthy construed Sanchez's "Amended Supplemental Complaint" as a supplement to the first complaint as opposed to an amendment that would supersede it.  *See* Docket Item 24, Docket Item 51 at 1 n.2.  The defendants do not appear to disagree with that characterization.  *See* Docket Item 32-10 at 2.  Therefore, this case currently proceeds against the City of Buffalo, the BPD, eight BPD officers, and one BPD lieutenant.  Docket Items 1, 25.

On June 3, 2021, the defendants moved for summary judgment.  Docket Item 32. After Sanchez responded to the motion, *see* Docket Items 41-43, the defendants replied on July 26, 2021, Docket Item 44, and Sanchez filed a sur-reply on July 30, 2021, Docket Item 46.  Judge McCarthy heard oral argument on August 6, 2021, and the defendants filed a letter brief responding to Sanchez's sur-reply on August 10, 2021. Docket Items 47-49.

On September 30, 2021, Judge McCarthy issued a Report and Recommendation ("R&R") finding that the defendants' motion should be granted in part and denied in part. Docket Item 51.  The City of Buffalo; BPD Officers Hawkins, Tripp, and Espinosa; and BPD Lieutenant Farley objected to the R&R on October 20, 2021, and they then twice amended those objections.[2]  Docket Items 54-56.  Sanchez filed objections on October 25, 2021.  Docket Item 57.  Sanchez responded to the defendants' objections on November 15, 2021, Docket Item 60, and the defendants replied on December 1, 2021, Docket Item 62.  The defendants responded to Sanchez's objections on November 17, 2021, Docket Item 61, and Sanchez replied on December 2, 2021, Docket Item 64.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objections, responses, and replies; and the materials submitted to Judge McCarthy.  Based on that review and for the reasons that follow, the Court accepts and

---

[2] It is unclear why those objections were not filed on behalf of all the defendants.

adopts Judge McCarthy's recommendation to grant in part and deny in part the defendants' motion for summary judgment on Sanchez's false arrest claims.  Based on a subsequent change in the law, however, the Court respectfully rejects Judge McCarthy's recommendation to grant the defendants' motion for summary judgment on Sanchez's malicious prosecution claims.  In sum, the Court grants in part and denies in part the defendants' motion.[3]

---

[3] Judge McCarthy also recommended granting the defendants' motion for summary judgment on Sanchez's claims of conspiracy, failure to prevent a conspiracy, and intentional infliction of emotional distress.  Docket Item 51 at 24-26.  Because Sanchez did not object to those recommendations, *see* Docket Item 57 at 1, this Court need not review them, *see Thomas v. Arn*, 474 U.S. 140, 149-50 (1985).  In any event, this Court agrees with Judge McCarthy that those claims should be dismissed.

Sanchez's false arrest and malicious prosecution claims are asserted against a number of BPD officers, the BPD, and the City of Buffalo.  *See* Docket Item 1 (claims related to the May 2016 arrest brought against the City of Buffalo; the BPD; and BPD Officers Lindsay Laracuente-Zgoda, Lamar McCulley, Mark Andrzejak, Michael Palizay, and Maurice Foster); Docket Item 25 (claims related to the November 2018 arrest brought against the City of Buffalo; the BPD; BPD Lieutenant Michael Farley; and BPD Officers Brandon Hawkins, Lauren Tripp, and Corey Espinosa).  Sanchez's papers are not always clear about how each individual defendant was involved in those incidents or how the City of Buffalo or the BPD could be liable for his claims.  But the defendants have not argued—in either their motion papers or objection—that any of Sanchez's claims against a particular defendant must be dismissed for lack of personal involvement.  Nor have they argued that Sanchez's claims against the City of Buffalo or the BPD, presumably brought pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), must be dismissed for reasons other than Sanchez's failure to state viable false arrest or malicious prosecution claims.  Likewise, the defendants do not contend that the BPD is not amenable to suit as an arm of the City of Buffalo.  In light of all that, this Court declines to consider any of those arguments *sua sponte*.  *See, e.g.*, *Davis v. N.Y.C. Hous. Auth.*, 379 F. Supp. 3d 237, 256 (S.D.N.Y. 2019) ("declin[ing] to construct arguments that [the defendants] have not raised themselves").

**FACTUAL BACKGROUND**[4]

Sanchez's claims involve two separate incidents—one on May 16, 2016, and one on November 2, 2018.

## I.   MAY 2016 ARREST

Sanchez and Alba Alvarez are the estranged parents of a minor child.  Docket Item 32-2 at ¶ 1; Docket Item 42 at 23.  On February 8, 2016, the Erie County Family Court issued a custody order granting Alvarez sole custody of the child and giving Sanchez visitation rights, in relevant part, on Mondays from 8:00 a.m. to 8:00 p.m. (the "Custody Order").  *See* Docket Item 32-2 at ¶¶ 2-3; Docket Item 32-3.  The pickup and drop-off location for Sanchez's visitation was not specified in the Custody Order. Docket Item 32-2 at ¶ 4; Docket Item 32-3 at 6.

Sanchez petitioned the Family Court to identify such a location, proposing a Tops Supermarket/Burger King parking lot located between Sanchez's and Alvarez's residences.  *See* Docket Item 32-2 at ¶ 6; Docket Item 42 at 26-28.  On May 16, 2016, the day the petition was set for a hearing, Sanchez picked up the child at Alvarez's house.  Docket Item 32-2 at ¶¶ 5-6; Docket Item 42 at 28-29.  Sanchez then attended the Family Court proceeding, where Sanchez's request was denied and the parties were "directed to work out the exchange location themselves."  Docket Item 32-2 at ¶ 6; Docket Item 42 at 29-30.

---

[4] The following facts, viewed in the light most favorable to Sanchez, *see Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011), are taken from the statements of facts and accompanying exhibits filed by both sides and the amended supplemental complaint, which was signed under penalty of perjury, Docket Item 25 at 14.

Sanchez and Alvarez then exchanged numerous text messages about the drop-off location that day.  Alvarez maintained that the child had to be dropped off at her home; Sanchez replied that he would drop off the child at the proposed parking lot. Docket Item 32-2 at ¶ 7; Docket Item 42 at 30.  Alvarez told Sanchez that if he did not bring the child back to her house by 8:30 p.m., she would call the police.  Docket Item 42 at 30.

Around 8:00 p.m., Sanchez texted Alvarez that he was at the parking lot and that he would remain there until 8:30.  Docket Item 32-2 at ¶ 9; Docket Item 42 at 30. Alvarez did not respond.  Docket Item 32-2 at ¶ 9; Docket Item 42 at 31.

About an hour later, BPD Officer Laracuente-Zgoda called Sanchez and told him that she was at Alvarez's house, that she had been shown court documents, and that because Sanchez's petition to drop the child off at the parking lot had been denied, he needed to return the child to Alvarez's residence.  *See* Docket Item 32-2 at ¶ 10; Docket Item 42 at 31.  According to Sanchez, he explained to Laracuente-Zgoda that the Custody Order did not include any particular drop-off location.  Docket Item 42 at 31. Sanchez refused to go to Alvarez's house and informed Laracuente-Zgoda that he instead would drop off the child at a police station.  *See* Docket Item 32-2 at ¶ 11; Docket Item 42 at 33.  Laracuente-Zgoda again told Sanchez to bring the child to Alvarez's house; she also told him that if he went to the police station instead, he would be arrested.  *See* Docket Item 32-2 at ¶ 10; Docket Item 42 at 33-34.

Sanchez nevertheless went to a police station with the child, Docket Item 32-2 at ¶ 12; Docket Item 42 at 36, and consistent with Laracuente-Zgoda's warning, he was handcuffed and arrested, Docket Item 32-2 at ¶ 12; Docket Item 42 at 36.  Sanchez was

charged with criminal contempt in the second degree, obstructing governmental administration in the second degree, and endangering the welfare of a child.  Docket Item 32-2 at ¶ 13; Docket Item 42 at 44.  The charges ultimately were dismissed. Docket Item 32-2 at ¶ 14; Docket Item 42 at 45.

## II.   NOVEMBER 2018 ARREST

According to Sanchez, video surveillance showed two individuals stealing property from his home on October 27, 2018.  Docket Item 42 at 49.  Six days later, Sanchez saw the two individuals identified in the surveillance recordings walking by his house.  *Id.*  He recognized them and caught up with one of them.  *Id.*

Sanchez called the police, and while waiting for the police to arrive, he spoke with the suspected thief.  *Id.*  A short time later, BPD Officers Hawkins, Tripp, and Espinosa arrived, and Sanchez showed Hawkins the surveillance video on Sanchez's cell phone.  *See* Docket Item 25 at ¶ 25; Docket Item 42 at 49-50.  Because the officers would not arrest the suspected thief, Sanchez requested and obtained the officers' names and the name of their supervisor.  *See* Docket Item 25 at ¶¶ 29-31; Docket Item 42 at 52.

Sanchez went to the police station and spoke with the officers' supervisor, BPD Lieutenant Farley.  Docket Item 25 at ¶¶ 31, 34; Docket Item 42 at 53.  The responding officers from the scene also "joined the conversation," and Sanchez ultimately was arrested and handcuffed.  Docket Item 42 at 53.

Sanchez was charged in one information/complaint with menacing in the second degree, and in another information/complaint with assault in the second degree (the "complaints").  Docket Item 32-2 at ¶ 17; Docket 32-7.  The certificate of disposition

shows that the assault charge subsequently was reduced to assault in the third degree,

Docket Item 32-8, and all charges eventually were dismissed.  *Id.*

## LEGAL PRINCIPLES

A court "shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  The movant—that is, the party seeking summary

judgment—has the burden of demonstrating that there is no disputed material fact.  *See*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The movant may satisfy this

burden by relying on evidence in the record, "including depositions, documents, . . .

[and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence

to support an essential element of the nonmoving party's claim," *Goenaga v. March of*

*Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at

322-23); *see* Fed. R. Civ. P. 56(c)(1)(B).  Once the movant has satisfied its initial

burden, "the nonmoving party must come forward with specific facts" showing that there

is a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).  If the

nonmovant fails to do so, the court may grant summary judgment.  *See Celotex*, 477

U.S. at 322-23.

A material fact is one that "might affect the outcome of the suit under the

governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There is a

genuine dispute of material fact "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Id.*  "[T]he court must view the evidence in the

record in the light most favorable to the non-moving party" and must draw "all

reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239

F.3d 456, 466 (2d Cir. 2001).  But "conclusory statements, conjecture, or speculation by

the party resisting the motion will not defeat summary judgment."  *Kulak v. City of New*

*York*, 88 F.3d 63, 71 (2d Cir. 1996).

## DISCUSSION

### I.    FALSE ARREST CLAIMS

Judge McCarthy recommended granting the defendants' motion for summary

judgment on Sanchez's false arrest claim for the arrest on May 16, 2016, but denying

the defendants' motion for the arrest on November 2, 2018.  Docket Item 51 at 9-17.  As

to the May 2016 arrest, Judge McCarthy reasoned that there was probable cause—or at

least arguable probable cause—to arrest Sanchez for criminal contempt because

Sanchez failed to return his child by 8:00 p.m. as directed by the Custody Order.  *Id.* at

9-14.  As to the November 2018 arrest, Judge McCarthy found various issues with the

defendants' evidence and ultimately decided that factual issues precluded summary

judgment.  *Id.* at 14-17.  Sanchez objects to the former conclusion and the defendants

object to the latter.  Docket Items 56, 57.  For the reasons that follow, this Court agrees

with Judge McCarthy on both.

#### A.    May 2016 Arrest

Sanchez objects to Judge McCarthy's recommendation to grant summary

judgment with respect to the May 2016 false arrest claim.  *See* Docket Item 57 at 1.

Sanchez essentially argues that Judge McCarthy erred on two fronts:  Sanchez

maintains that it is clearly established that the police cannot arrest an individual under

New York Penal Law § 215.50(3)[5] solely for violating a custody or visitation order and that even if the police could arrest someone for such a violation, Sanchez did not in fact violate the Custody Order.  *See id.* at 2-37.  Neither argument warrants rejecting Judge McCarthy's recommendation.

### 1.   Authority to Arrest for Violation of Custody or Visitation Orders

Judge McCarthy found that there was no settled authority that would preclude law enforcement from making warrantless arrests for violations of family court visitation orders.  Docket Item 51 at 11-14.  Therefore, he concluded that the defendants would at least be entitled to qualified immunity with respect to this claim.  *Id.* at 14; *see also Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020) ("Qualified immunity protects government officials from civil damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (citation and internal quotation marks omitted)).

Sanchez disagrees with Judge McCarthy's analysis of the cases that Sanchez cited in his opposition to the defendants' motion for summary judgment, and he argues that the cases on which Judge McCarthy relied are distinguishable.  *See* Docket Item 57 at 7-19.  Sanchez generally argues that apart from emergencies, imminent danger, violations of protective orders, or other contemporaneous criminal acts, the New York State legislature intended family courts to have the exclusive authority to enforce

---

[5] "A person is guilty of criminal contempt in the second degree when he engages in . . . [i]ntentional disobedience or resistance to the lawful process or other mandate of a court."  N.Y. Penal Law § 215.50(3).

visitation orders issued under Article 6 of the New York Family Court Act,[6] and he cites the family court's contempt authority as evidence of that.  *See id.* at 10-11, 15-16.  And Sanchez says that the police could have arrested him in connection with the Family Court dispute here only if: (1) Alvarez had brought a proceeding for Sanchez's violation of the Custody Order; or (2) the Family Court determined that Sanchez had violated the Custody Order and issued a modified order including language warning him that noncompliance would result in arrest, and Sanchez violated the modified order.  *See id.* at 9, 11.

There is no doubt that Sanchez has thoughtfully advocated for himself.  Indeed, Sanchez may well be correct that law enforcement does not have the authority to arrest someone under New York Penal Law § 215.50(3) solely for violating a visitation or custody order.

But this Court need not decide or resolve that thorny issue.  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (citation and internal quotation marks omitted). Such "reasonable but mistaken judgments," *id.*, include those based on mistakes of law, mistakes of fact, and mistakes of mixed questions of law and fact, *see Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Therefore, the only question this Court needs to answer is whether it is clearly established that an arrest under these circumstances

---

[6] Article 6 of the Family Court Act grants family courts the jurisdiction to preside over proceedings "for the determination of the custody or visitation of minors."  *See* N.Y. Fam. Ct. Act § 651(b).  The caption on the Custody Order relevant to this case suggests that it was filed under Article 6 of the Family Court Act.  *See* Docket Item 32-3 at 1.

violates a defendant's constitutional rights. *See Jones*, 963 F.3d at 224. And this Court agrees with Judge McCarthy that the answer to that question is no.

In finding that the law on this issue is not clearly established, Judge McCarthy cited several cases demonstrating that law enforcement may arrest a defendant for violating visitation orders. *See* Docket Item 51 at 13 (noting that "at least one higher court has affirmed a conviction for criminal contempt in the second degree arising from a violation of a family court custody order"). Sanchez argues that those cases are inapposite because, among other things, they involved other charges, an order of protection, or a family offense proceeding. *See, e.g.*, Docket Item 57 at 7, 17, 18. But those differences do not undermine Judge McCarthy's conclusion that there is no "'consensus of cases of persuasive authority" supporting Sanchez's interpretation of the law. *See* Docket Item 51 at 13.

In fact, Sanchez concedes that the cases on which he relies discuss a different criminal statute, *see* Docket Item 57 at 26, and that "few or no higher court[s] ha[ve] directly addressed the issue presented here," *id.* at 9. Nevertheless, Sanchez maintains that "every reasonable police officer would have understood that like arresting without a warrant or an explicit directive to do so, [arresting] an individual for a missed child support payment would be a violation of that individual's right." *Id.* at 27. And he says that the same "reasoning applies to the issue here as no violence or crime arose out of the police officer's intervention." *Id.* In other words, Sanchez contends that officers do not have the authority to arrest an individual solely for not paying child support required by a family court order, and that, by way of analogy, law enforcement officers know or should know that they cannot arrest an individual solely for violating a visitation order.

11

*See Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances. . . . Accordingly, . . . the salient question . . . is whether the state of the law . . . gave respondents fair warning that their alleged treatment [of the plaintiff] was unconstitutional.").

But it is not clear that Sanchez is correct.  In fact, a New York State court decision, *People v. Moody*, 53 Misc. 3d 31, 38 N.Y.S.3d 872 (App. Term, 2d Dep't 2016), suggests the opposite.

In *Moody*, the court noted that although section 411 of the Family Court Act grants the family court exclusive original jurisdiction over proceedings for support or maintenance, "[that] grant of exclusive jurisdiction has no bearing on the issue of the Justice Court's jurisdiction to prosecute criminal charges."  *Id.* at 33, 38 N.Y.S.3d at 873. Therefore, the court reinstated an accusatory instrument that included twenty counts of criminal contempt in the second degree for alleged disobedience of a family court order requiring child support.  *Id.* at 32-33, 38 N.Y.S.3d at 873-74.  The court explained that section 156 of the Family Court Act, regarding judicial contempt authority, "does not preclude the prosecution of a criminal contempt charge in a local criminal court, since that section specifically provides that the Family Court has jurisdiction to hear violations of orders of the Family Court 'unless a specific punishment or other remedy for such violation is provided in this act or any other law,' such as is the case with Penal Law § 215.50(3)"—the same statute that the defendants rely on here.[7]  *See id.* at 33, 38

---

[7] Furthermore, the New York State Court of Appeals has noted that "the legislature has made clear its intent, as a pure statutory matter, that a person may be subject to punishment pursuant to a finding of contempt under the Judiciary Law, as well as a criminal prosecution under the Penal Law."  *New York v. Sweat*, 24 N.Y.3d 348, 356, 23 N.E.3d 955, 961 (2014) (noting that New York Penal Law § 215.54

N.Y.S.3d at 873-74.[8]  In other words, the court in *Moody* suggested that violations of family court orders may be prosecuted under New York Penal Law § 215.50(3) in courts other than family court and therefore that law enforcement may well have the authority to arrest someone for violating a family court order.

The question is not whether the police were correct when they arrested Sanchez. The question is rather whether they had at least arguable probable cause to arrest him. And the answer is that they did because, as Judge McCarthy noted, there is no clear consensus of law on this issue.  In other words, because "officials of reasonable competence could disagree on the legality of the action at issue in [this] particular factual context," the defendants are entitled to qualified immunity with respect to the May 2016 arrest and therefore to summary judgment on this issue.[9]  *Doninger v.*

_____

provides that "[a]djudication for criminal contempt" under section 750 of the Judiciary Law "shall not bar a prosecution for the crime of criminal contempt under section 215.50 based upon the same conduct").

[8] In *Moody*, the defendant also was charged with nonsupport of a child in the second degree under New York Penal Law § 260.05(2), *see Moody*, 53 Misc. 3d at 32, 38 N.Y.S.3d at 873, a wrinkle that Sanchez presumably would argue makes *Moody* distinguishable from the facts here.  But that additional charge is a distinction without a difference.  The Court has not found any case supporting Sanchez's argument that additional charges are required for law enforcement to have the authority to arrest under section 215.50(3) for disobeying a family court order of child support—and likewise, for other courts to have jurisdiction over such a charge.  *See* Docket Item 57 at 17-18.  And the absence of cases suggests that even if Sanchez's argument is correct, it is not clearly established.  *See Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7-8 (2021) ("Although this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." (citation and internal quotation marks omitted)).

[9] Sanchez appears to cite BPD policy to argue that officers should issue an appearance ticket, rather than make an arrest, for the offenses with which he was charged.  *See* Docket Item 57 at 19-21.  The defendants object to the introduction of new evidence with respect to Sanchez's objection, but they do not specify which of Sanchez's exhibits are new.  *See* Docket Item 61.  In any event, according to the policy Sanchez has submitted, New York Penal Law § 215.50 is listed as one of the offenses

*Niehoff*, 642 F.3d 334, 353 (2d Cir. 2011) (alterations, citation, and internal quotation marks omitted).

### 2.    Violation of the Custody Order and Criminal Contempt

Sanchez also argues that the defendants did not have probable cause to arrest him because he did not in fact violate the Custody Order.  *See* Docket Item 57 at 2-6. He says that someone can be found guilty of criminal contempt only when that person violates a clear, unequivocal directive.  *See id.* at 4.  Along the same lines, he argues that "[w]here the order alleged to have been disobeyed is capable of a construction consistent with the innocence of the party," there likewise should be "no adjudication of contempt."  *Id.* at 5.  And as to intent, he contends that to violate the law, the defendant must have had a conscious objective to engage in such conduct and "defy the authority of the court or evade its mandate."  *Id.*

Sanchez then maintains that he at least tried to comply with the Custody Order by showing up at the parking lot at 8:00 p.m. to return the child and that Alvarez thwarted the return by failing or refusing to retrieve the child there.  *Id.* at 3.  He argues that the ambiguity in the Custody Order—the omission of a drop-off location—cannot be rewritten to his detriment.  *Id.* at 5.  And he says that the defendants could have read and analyzed the Custody Order; if they did, he says, they would have seen that it did not include a clear and unequivocal mandate.  *Id.* at 6.

The circumstances of Sanchez's arrest—including the apparent deterioration of communication between him and Alvarez—are unfortunate.  And it is indeed possible

---

in which "officers should effectuate an arrest and transport to Central Booking, where further investigation and consideration for the issuance of an appearance at Central Booking" should take place.  *See* Docket Item 57 at 20-21.

that Sanchez would not have been convicted of criminal contempt had the case proceeded to trial.  Nonetheless, the probable cause and arguable probable cause standards require far less than proof beyond a reasonable doubt.  *See Zalaski v. City of Hartford*, 723 F.3d 382, 393 (2d Cir. 2013) ("[U]nlike at trial, where circumstantial evidence must support a finding of culpable intent beyond a reasonable doubt, a probable cause determination, and thus an arguable probable cause determination, can be made on 'substantially less' evidence.").  And after viewing Alvarez's text messages in which she made clear that Sanchez was to drop off the child at her house, Docket Item 42 at 31, an officer could have reasonably concluded that Sanchez's unilateral decision to wait at the Tops Supermarket/Burger King parking lot showed his intent to violate the Custody Order, which ended Sanchez's time with the child at 8:00 p.m. on Mondays.  *See Rheingold v. Harrison Town Police Dep't*, 568 F. Supp. 2d 384, 390-92 (S.D.N.Y. 2018) (concluding that officer had probable cause to arrest for criminal contempt after observing that the person arrested knew about order and was in violation of it at the time of arrest).

That is especially so because Sanchez had attempted—that very day—to set the parking lot as the drop-off location, and the Family Court refused to do so.  *See* Docket Item 32-2 at ¶ 6; Docket Item 42 at 29-30.  So Sanchez had asked the Family Court to permit him to return the child to somewhere other than Alvarez's home, the Family Court refused, but Sanchez nevertheless refused to drop the child off at Alvarez's

home.  That too supported the officers' reasonable conclusion that Sanchez violated a court order.

For all those reasons, this Court agrees with Judge McCarthy that the officers had at least arguable probable cause to arrest and that the defendants therefore are entitled to summary judgment on Sanchez's March 2016 false arrest claim.

### B.    November 2018 Arrest

Judge McCarthy recommended denying the defendants' motion for summary judgment as to Sanchez's November 2018 false arrest claim because: (1) the defendants relied only on unsworn complaints to support their motion for summary judgment; (2) Sanchez disputes the veracity of the allegations in those complaints; (3) some facts alleged in the complaints are false on their face; and (4) Sanchez disputes whether the alleged victim, who spoke only Spanish, could have reported anything to the defendants, who are not fluent in Spanish.  Docket Item 51 at 15-17.  Judge McCarthy also concluded that these issues precluded the defendants' entitlement to qualified immunity.  *Id.* at 17.

In their objections, the defendants argue that: (1) their unsworn evidence still should be considered; (2) the false allegation that the police officer was the victim is a "typographical error" that should not preclude summary judgment; and (3) Sanchez's affidavit is contradictory and insufficient to defeat their motion for summary judgment. *See* Docket Item 56.  But regardless of whether this Court considers the unsworn complaints, the parties offer starkly different accounts about what happened on November 2, 2018.  Indeed, Sanchez explicitly says that he was arrested at the police station only after the defendants "started alleging the same false accusations done

16

moments before at the scene," *see* Docket Item 42 at 53, and that at least one of the

defendants "lied under oath" in the charging instrument, *see id.* at 54.  And for that

reason, issues of fact preclude summary judgment.

The defendants argue that what Judge McCarthy found was a facially false

statement in one sworn statement actually was a typographical error and that

"typographical errors should not obfuscate the reality of a case."  Docket Item 56 at 4.

But the defendants have not offered any evidence about the "reality of [the] case," and

that is their burden to bear.  *See Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir.

2010) (noting that defendants "bear[] the burden of proving probable cause as an

affirmative defense"); *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, 2014

WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014) (noting that at summary judgment, the

"party bearing the burden of proof at trial must come forward with evidence on each

element of its claim or defense illustrating its entitlement to relief").  So mistake or not,

the defendants have not presented evidence sufficient to conclusively resolve issues of

fact about what happened that day.

The defendants also assert that Sanchez's testimony is "so contradictory as to

cast doubt on its plausibility" and therefore argue that this Court "may make a credibility

determination" at this stage.  *See* Docket Item 56 at 7.  For example, the defendants

note that Sanchez said that the alleged victim was unable to speak fluent English but

elsewhere stated that the alleged victim had "no understanding of English."  *Id.* (citing

Docket Item 25 at ¶ 28; Docket Item 42 at 9).  But that is not necessarily inconsistent:

Someone who has no understanding of English likely is unable to speak fluent English.

Giving Sanchez, a *pro se* plaintiff, the benefit of every inference at this point, this Court

cannot conclude that his testimony is inherently unbelievable and insufficient to defeat the defendants' motion.  *See Randolph v. Griffin*, 816 F. App'x 520, 523 (2d Cir. 2014) (summary order) ("[E]ven when a plaintiff has relied exclusively on his own testimony, courts have denied summary judgment to defendants so long as the plaintiff's testimony was not contradictory or rife with inconsistencies such that it was facially implausible." (citation and internal quotation marks omitted)).

Therefore, and for the reasons stated in the R&R, the defendants' motion for summary judgment on the November 2018 false arrest claim is denied.

## II.    MALICIOUS PROSECUTION

Judge McCarthy recommended granting summary judgment as to Sanchez's malicious prosecution claims because Sanchez was unable to show that the proceedings ended in a way that affirmatively indicated his innocence.  Docket Item 51 at 17-23.  Sanchez objects to those findings.  Docket Item 57 at 38-45.

After Judge McCarthy issued his R&R, the Supreme Court addressed the circuit split over the favorable-termination element of a section 1983 malicious prosecution claim in *Thompson v. Clark*, 142 S. Ct. 1332 (2022).[10]  More specifically, the Court held that a plaintiff pursuing a malicious prosecution claim under section 1983 "need only show that the criminal prosecution ended without a conviction."  *Id.* at 1341.

The certificates of disposition show that this element is satisfied here.  Docket Item 32-6 (indicating that the charges arising from the May 16, 2016 arrest were dismissed); Docket Item 32-8 (same for charges arising from the November 2, 2018

---

[10] The defendants acknowledged this change of law in a letter to the Court filed on April 12, 2022.  Docket Item 68.

arrest).  Therefore, based on this change in the law, this Court respectfully rejects Judge McCarthy's recommendation that the malicious prosecution claims should be dismissed because the underlying proceedings did not terminate in Sanchez's favor.

This Court therefore addresses the other elements of Sanchez's malicious prosecution claims—that is, whether the criminal proceedings against Sanchez were initiated or continued with malice and without probable cause.  *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010).[11]

### A.    2016 Charges

After the May 2016 arrest, Sanchez was charged with second-degree criminal contempt, second-degree obstruction of governmental administration, and endangering the welfare of a child.  *See* Docket Item 32-6.  As Judge McCarthy correctly noted, to defeat a malicious prosecution claim, the defendants must have had probable cause to prosecute each charged offense.  *Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014).

Judge McCarthy found that the defendants did not even attempt to argue that there was probable cause as to the latter two charges.  Docket Item 51 at 19.  The defendants have not challenged this finding, so this Court need not review it.  *See Thomas*, 474 U.S. at 149-50.  Regardless, this Court agrees with Judge McCarthy. That being said, this Court will make explicit what Judge McCarthy implied: this

---

[11] For a section 1983 malicious prosecution claim, a plaintiff also must establish "a sufficient post-arraignment liberty restraint."  *Rohman v. N.Y.C. Transit Auth. (NYCTA)*, 215 F.3d 208, 215 (2d Cir. 2000).  The defendants have not argued that this element is not satisfied here*, see, e.g.*, Docket Item 32-10 at 6, and the Court therefore presumes that it is satisfied.

malicious prosecution claim is limited to the charges of second-degree obstruction of governmental administration and endangering the welfare of a child.[12]

As to malice, the defendants argue that there is no evidence that the officers did not believe that Sanchez was guilty of the crimes charged or that they were motivated by any wrongful or improper purpose.  Docket Item 32-10 at 6.  But "a lack of probable cause generally creates an inference of malice."  *Manganiello*, 612 F.3d at 163 (alterations omitted).  And malice does not require a wrong or improper purpose but can arise from the "reckless disregard of the rights of the plaintiff."  *Id.* (quoting *Pinksy v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996)).  Because the defendants have not argued or shown that they had probable or arguable probable cause to prosecute Sanchez for second-degree obstruction of governmental administration or endangering the welfare of a child, there is a question of fact about whether the prosecution of those charges was initiated or continued with malice.

For that reason, the defendants' motion for summary judgment on Sanchez's malicious prosecution claim as to the 2016 second-degree obstruction of governmental administration and endangering the welfare of a child charges is denied.

---

[12] Judge McCarthy and this Court have concluded that there was at least arguable probable cause to arrest Sanchez for the other charged offense—criminal contempt in the second degree.  And while probable cause to prosecute is a higher bar than probable cause to arrest, *see Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021), there are no intervening facts suggesting that arguable probable cause dissipated before Sanchez was charged with that offense.  *See McKay v. City of New York*, 32 F. Supp. 3d 499, 511 (S.D.N.Y. 2014) ("[A] malicious prosecution claim will be defeated by a finding of probable cause to arrest, unless the plaintiff can demonstrate mitigating facts to vitiate probable cause which were first uncovered after the arrest.").  So for the same reasons that the defendants had probable cause to arrest Sanchez for that offense, they had probable cause to prosecute him for it, and the defendants are entitled to summary judgment with respect to that claim.

**B.**     **2018 Charges**

Following his November 2018 arrest, Sanchez was charged with menacing in the second degree and assault in the second degree; the latter charge subsequently was reduced to assault in the third degree. *See* Docket Item 32-8. This Court already has found an issue of fact about whether the defendants had probable or arguable probable cause to arrest Sanchez for assault, and that issue applies to the charge of menacing in the second degree arising from the same incident. *See* Docket Item 32-10 at 5-6. Likewise, the issue of fact regarding probable cause for these charges creates an issue of fact as to whether they were brought or continued with malice. Therefore, the defendants' motion for summary judgment on Sanchez's malicious prosecution claim regarding those charges is denied.

## CONCLUSION

For the reasons stated above, this Court accepts in part and rejects in part Judge McCarthy's recommendations. The defendants' motion for summary judgment, Docket Item 32, is GRANTED in part and DENIED in part. The following claims may proceed to trial: (1) Sanchez's false arrest claim arising from his November 2018 arrest; (2) Sanchez's malicious prosecution claim regarding the second-degree obstruction of governmental administration and child endangerment charges arising from his May 2016 arrest; and (3) Sanchez's malicious prosecution claim regarding the menacing and assault charges arising from his November 2018 arrest. Sanchez's remaining claims are dismissed. **The parties shall contact the Court within 30 days of the date of this order to schedule a status conference to set a trial date.**

SO ORDERED.


Dated:      September 28, 2022
               Buffalo, New York


                              */s/ Lawrence J. Vilardo*
                              LAWRENCE J. VILARDO
                              UNITED STATES DISTRICT JUDGE